UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK BEAUCHAMP,

       Plaintiff,                      CIVIL ACTION NO. 10-12901

      v.                                 DISTRICT JUDGE MARIANNE O. BATTANI

JOHN RUBITSCHUN, JAMES        MAGISTRATE JUDGE MARK RANDON
ATTERBURY, MIGUEL BERRIOS
CHARLES BRADDOCK, STEPHEN
DEBOER, ENID LIVINGSTON, JAMES
QUINLAN, MARIANNE SAMPER
BARBARA SAMPSON, ARTINA
HARTMAN, PATRICIA CARUSO

       Defendants.
_____/

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (DKT. NO. 12)**

      Plaintiff, Mark Beauchamp ("Plaintiff"), filed this 42 U.S.C. § 1983 action alleging that several current and former members of the Michigan Parole Board and the Director of the Michigan Department of Corrections ("MDOC") (collectively "Defendants") violated his due process rights and the *Ex Post Facto* Clause of the United States Constitution. Judge Marianne Battani has referred the case to the undersigned for all pretrial matters pursuant to 28 U.S.C. § 636 (Dkt. No. 5).

      This matter is before the Court on Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted (Dkt. No. 12). Plaintiff has filed a response to the motion (Dkt. No. 15), and the undersigned has determined that the motion can be

decided without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons set forth below, it is **RECOMMENDED** that Defendants' motion to dismiss be **GRANTED-IN-PART AND DENIED-IN-PART**: granted as to Plaintiff's claim for violation of the *Ex Post Facto* Clause but denied as to Plaintiff's due process claim.

## I. FACTUAL BACKGROUND

The facts of this case are largely undisputed. In April of 1979, Plaintiff pled guilty to a charge of Second Degree Murder (Dkt. 9, ¶ 15). In exchange for his guilty plea, the State of Michigan dismissed Plaintiff's original charge of Open Murder. Plaintiff was sentenced to life in prison *with the possibility of parole*. Since being sentenced, he has been continuously incarcerated with the MDOC. Plaintiff is currently serving his sentence in the G. Robert Cotton Correctional Facility in Jackson, Michigan (Dkt. No. 15).

Pursuant to Mich. Comp. Laws 791.234(8)(a), Plaintiff became eligible for parole consideration after serving ten years, yet he did not receive a parole hearing. As a result of Plaintiff's status as a class member in *Foster-Bey et al. v. Sampson et al.*, and *Foster-Bey et al. v. Rubitschun, et al.*, after serving 35 years of his sentence, he was given a parole interview and was scheduled to have a public hearing on May 19, 2009 (Dkt. 9, Ex. 2). However, in 1982 – three years after Plaintiff was sentenced – the Michigan Legislature passed Public Act 314, Mich. Comp. Laws 791.234(8)(c), which provided a "judicial veto" of parole for any prisoner serving a life sentence with the possibility of parole. In relevant part, the Act states:

> A decision to grant or deny parole to the prisoner shall not be made until after a public hearing held in the manner prescribed for pardons and commutations in sections 44 and 45. Notice of the public hearing shall be given to the sentencing judge, or the judge's successor in office, and *parole shall not be granted if the*

> *sentencing judge, or the judge's successor in office, files written objections to the granting of the parole within 30 days of receipt of the notice of hearing.* The written objections shall be made part of the prisoner's file. (Emphasis added).

On April 27, 2009, Judge David Swartz, who was the successor to Judge Ross Campbell, Plaintiff's original sentencing judge, responded to notice of Plaintiff's upcoming public hearing with a letter to Michigan Parole Board Chairperson, Barbara Sampson, stating,

> I have reviewed his file and presentence investigation and have concluded that while Mr. Beauchamp pled guilty to a second degree murder, the facts of this case clearly establish a factual basis for a first degree premeditated murder. Accordingly, I see no justification to consider parole for this individual.

(Dkt. No. 15, Ex. 3). As a result of Judge Swartz's objection, Plaintiff's public hearing was cancelled, and he was scheduled to begin routine parole consideration beginning in February, 2011 (Dkt. No. 9, ¶¶ 27-29; and Exs. 4 and 5 to the first amended complaint). Plaintiff claims that the 1982 statute allowing a successor judge to object to a parole hearing violates the *Ex Post Facto* Clause of the United States Constitution, and violates his due process rights (Dkt. No. 9, ¶¶ 30-32). The Michigan Attorney General, on behalf of Defendants, has moved to have the Plaintiff's claims dismissed for failure to state a claim upon which relief can be granted. In essence, Defendants argue that Plaintiff's claim is barred by claim preclusion, and that the statute permitting judicial veto over parole hearings does not violate the *Ex Post Facto* Clause, or Plaintiff's due process rights (Dkt. No. 12).

## II. <u>ANALYSIS</u>

### A. *Standard of Review*

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. As the Supreme Court has recently made clear, "to survive a

-3-

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (holding that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."), quoting *Bell Atlantic v. Twombly*, 127 S.Ct. 1955, 1974 (2007). Although the pleader is given the benefit of the doubt as to inferences that can be derived from the allegations, that deference "does not extend to facts which are not 'well-pleaded.'" *Greenberg v. Compuware Corp.*, 889 F.Supp.1012, 1015-1016 (E.D. Mich. 1995).

### B. Plaintiff's Claim is not Barred by Res Judicata (Claim Preclusion)

In their motion to dismiss, Defendants' argue that Plaintiff's claim should be barred due to the doctrine of *res judicata*, otherwise known as claim preclusion.

> The general rule of claim preclusion, or true *res judicata*, is that a valid and final judgment on a claim precludes a second action on that claim or any part of it. Claim preclusion applies not only to bar the parties from relitigating issues that were *actually* litigated but also to bar them from relitigating issues that *could have been raised* in an earlier action.

*J.Z.G. Resources v. Shelby Ins. Co.*, 84 F.3d 211,214 (6th Cir. 1996) (emphasis in original). In order to establish that a case is barred by *res judicata*, the party raising it as an affirmative defense – in this instance, Defendants – must show the following elements:

> (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Bragg v. Flint Bd. Of Educ.*, 570 F.3d 775, 776 (6th Cir. 2009).

Defendants argue that Plaintiff's claims in this case are precluded by the Sixth Circuit's decision in *Foster v. Booker*, 595 F.3d 353 (6th Cir. 2010). The first element that must be shown

in order to establish claim preclusion is obviously present in this instance. The decision in *Foster* was a final one on the merits, and the Sixth Circuit is a court of competent jurisdiction.

The second element is also satisfied. Defendants argue, and Plaintiff concedes that, Plaintiff was considered a party in *Foster*, as the case was a class action lawsuit, with the class in *Foster* being defined as:

> [a]ll parolable lifers in the custody of the Michigan Department of Corrections who committed crimes (for which they received a parolable life sentence) before October 1, 1992, and whose parole the "new" parole board has denied, passed over, expressed no interest in pursuing or otherwise rejected or deferred…

*Foster*, 595 F.3d at 355. Plaintiff met the criteria sufficient to be labeled a class member in *Foster*, because he pled guilty to Second Degree Murder in 1979, he was in custody of the Michigan Department of Corrections as of 1992, and he was sentenced to life in prison, with the possibility of parole. For these reasons, Plaintiff was a party in *Foster*, satisfying the second element.

Although Defendants can establish the first two elements of claim preclusion, the final two present a greater challenge, and Defendants' contention that they have been met are conclusory. As such, the undersigned finds that the third and fourth elements of claim preclusion (*i.e.*, whether or not the issue was previously litigated, or could have been litigated, and whether there are like identities of the causes of action) have not been established by Defendants.

Ironically, in *Foster*, the defendants also argued that the plaintiffs' claim should be precluded by *res judicata*, however, the case survived the defendant's motion because the plaintiffs in a previous case, *Shabazz v. Gabry*, 123 F.3d 909 (6th Cir. 1997), were challenging the continuous implementation of minor changes in the parole system, whereas the *Foster*

plaintiffs were challenging the parole board's new policy of "life means life." *Foster*, 595 F.3d at 359 (court concluded that *Shabazz* did not preclude the Plaintiff's claim).  The same reasoning applies here.  Defendants in this matter cannot establish that the same issue being litigated in this case was litigated in either *Shabazz* or *Foster*.  Instead, Defendants argue that the issue of a judicial veto could have been litigated by the parties in those previous cases, because some of the class members in these cases had been subject to a judicial veto.  However, Plaintiff has not challenged the existence of the judicial veto; instead, Plaintiff argues that Judge Swartz re-sentenced Plaintiff through his use of the judicial veto.  This issue was not directly addressed by either *Foster* or *Shabazz* as the focus of that litigation was on the Parole Board's practice of enforcing its "life means life" policy.  Furthermore, it would have been impossible for the issue in this matter to be litigated during either of the previous cases, because neither class alleged that they were being re-sentenced to harsher penalties solely through the use of a judicial veto of a parole hearing.

In sum, Defendants have adequately shown that *Shabazz* and *Foster* both constituted final decisions made by courts of competent jurisdiction, and that Plaintiff was a party in both the previous and current cases.  However, Defendants failed to demonstrate that the issue was or could have been previously litigated, and failed to show that there was an identity in the causes of action.  If Plaintiff's claims are taken as true, as they must be for purposes of a motion to dismiss for failure to state a claim, the identity of the cause of the action in *Foster* and *Shabazz* was a challenge to the Parole Board's policy of "life means life" and the current challenge is against a specific judicial veto; therefore, the doctrine of *res judicata* does not apply.

### C. *Plaintiff Has Failed to State a Claim For* Ex Post Facto *Violation*

Defendants next argue that Plaintiff has still failed to state a claim that establishes a violation of the *Ex Post Facto* Clause of the Constitution.

In order to violate the *Ex Post Facto* Clause of the Constitution, the Michigan Parole Board must have imposed a penalty on an act that was previously not punishable when the act was committed. *See United States v. Will*, 449 U.S. 200, 225 (1980)(citing *Burgess v. Salmon*, 97 U.S. 381 (1878). More pertinently stated,

> The *Ex Post Facto* Clause is "aimed at laws that 'retroactively alter the definition of crimes or increase the punishment for criminal acts.'" *Cal. Dep't of Corr. v. Morales,* 514 U.S. 499, 504, (1995). When an inmate challenges an allegedly *ex post facto* parole law, this court "must examine the relevant law in effect at the time [the inmate's] offense was committed and compare it with the retroactively-applied version of the law." *Shabazz*, 123 F.3d at 912. The "focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether [the] change . . .increases the penalty by which a crime is punishable." *Morales,* 514 U.S. at 506 n.3. Where a legislative change is argued to increase the *risk* of affecting a prisoner's punishment, the Supreme Court has made clear that the appropriate inquiry is whether the retroactively-applied version of the parole law "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." *Id.* at 509. *When the retroactively-applied version of the law "does not by its own terms show a significant risk" of increased punishment, the inmate bringing the ex post facto challenge "must demonstrate, by evidence drawn from the [law]'s practical implementation by the agency charged with exercising discretion, that [the law's] retroactive application will result in a longer period of incarceration than under the earlier" version of the law*. *Garner v. Jones,* 529 U.S. 244, 255 (2000). (Emphasis added).

*Foster v. Booker*, 595 F.3d 353, 361 (6th Cir. 2010). Plaintiff argues that his punishment has been harsher than he originally contemplated when he reached his plea bargain in 1979, and that

the judicial veto constitutes a violation of the *Ex Post Facto* Clause; the Defendants argue that it does not. Defendants are correct.

Undoubtedly, when Plaintiff pled guilty in 1979, and was sentenced to life in prison, with the possibility of parole, he was not guaranteed the right to parole. As the Sixth Circuit emphasized in *Foster*, release on parole has always been "discretionary with the parole board" *Foster*, 595 F.3d at 356 (quoting Mich. Comp. Laws § 791.234(11)), and the judicial veto applies only to cases involving parolable life sentences. Thus, like all prisoners subject to the judicial veto, Plaintiff's expectation at the time he was sentenced could have been no greater than that he would remain in prison for the rest of his life unless, in its discretion, "the [parole] board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." *Id*. § 791.233(1)(a). Even before the Parole Board changed its policies in 1982, there was a possibility that Plaintiff would be forced to serve his entire *life sentence*. Therefore, the retroactively-applied version of the judicial veto "does not by its own terms show a significant risk of increased punishment" and Plaintiff must show that as applied to him the judicial veto "*will* result in a longer period of incarceration than under the earlier version of the law." *Garner*, 529 U.S. at 255. (Emphasis added). As discussed above, Plaintiff cannot meet this burden.

Moreover, although Judge Swartz described the facts in Plaintiff's criminal case as sufficient to establish a factual basis for first degree murder – and objected to Plaintiff's parole on that basis – this does not mean Plaintiff will never receive a parole hearing. Had Judge Swartz simply indicated "I object to Mr. Beauchamp receiving parole," Plaintiff's parole hearing

would still have been cancelled.  In either case, Plaintiff would still be entitled to periodic reviews until he is "paroled, discharged or deceased." Mich. Comp. Laws § 791.234(8)(a).  In the future, Judge Swartz may reevaluate his position, or his successor may decide not to object to Plaintiff's parole hearing.  Plaintiff's promised *possibility* of parole has, therefore, not been foreclosed and remains within the discretion of the parole board, through its use of the judicial veto to prevent a parole hearing, until the next review period.  Furthermore, under normal circumstances it would not matter whether the sentencing judge or any of his successors issued the judicial veto, because under any version of the law, there was always the possibility that Plaintiff would be made to live out his days in prison.

### D.  *Plaintiff Has Stated a Claim That His Due Process Rights Have Been Violated*

Plaintiff's final allegation in his complaint is that Judge Swartz's veto of his parole hearing made his plea-bargain illusory and, in effect, resentenced Plaintiff to first degree, premeditated murder, in violation of Plaintiff's substantive and procedural Due Process rights under the Fourteenth Amendment to the Constitution (Dkt. 9, ¶ 31).

In response, Defendants correctly state that Plaintiff has no protected liberty interest in being paroled.  As the Sixth Circuit states in *Foster*, "Michigan prisoners have no constitutionally protected liberty interest in parole." *Foster*, 595 F.3d at 368.  However, this protected liberty interest is with regard to the overall Michigan parole procedure.  Plaintiff does not claim that he is challenging the entire parole procedure; instead, he claims that the specific actions of Judge Swartz have deprived him of due process of law.  Based on the bare facts of Plaintiff's complaint, this assertion appears to have merit.

Although *Foster* recognizes that Michigan prisoners have no liberty interest in parole, it offers three theories under which a prisoner may nevertheless establish a due process claim.

> The due process claim could be taken as a challenge to the sufficiency of parole procedures under general procedural due process principles applicable when liberty or property interests are deprived by the government.
> …
> A different type of due process theory would be analogous to *ex post facto* jurisprudence, protecting against punishment that could not have been anticipated when the crime was committed, but where *ex post facto* protections technically do not apply because the increased punishment does not result from a promulgated statute or regulation.  A third theory would be that constitutional due process precludes the imposition of punishment greater than that actually imposed or contemplated by the sentencing judge.

*Id.*  Under the first theory, again, Plaintiff has no protected liberty interest in parole, therefore, his procedural due process challenge is invalid.  The process has already been affirmed, and furthermore there was always the possibility that Plaintiff would be made to serve his entire life sentence.  Plaintiff was sentenced to life in prison with the possibility of parole; this did not guarantee that he would ever be paroled, nor did it even guarantee that he would eventually be given a parole hearing.  Therefore, Plaintiff's procedural due process claim should fail.

However, Plaintiff contends that he is not only being denied his procedural due process rights, but that he is being denied due process of law in general, so the other theories must be analyzed as well.  In accordance with the second and third theories under which a due process claim should be examined, Plaintiff may have a valid claim.  Although Plaintiff cannot state a claim for an *ex post facto* violation, he has alleged that the punishment imposed upon him was a direct result of Judge Swartz's actions, and not necessarily due to a statute or regulation.  Judge Swartz's statement that Plaintiff should not be paroled because he could have been found guilty

-10-

of first-degree murder – and should be punished as such – could be taken as a retroactive increase in Plaintiff's punishment.  Plaintiff's original plea bargain called for him to be sentenced for second-degree murder.  If, in fact, Judge Swartz has decided to increase the severity of the Plaintiff's punishment based solely on his belief that the facts establish a basis for a punishment of first-degree murder, then he may have in effect re-sentenced the Plaintiff beyond the limits actually imposed by the sentencing court, which would be a violation of Plaintiff's due process rights.  Although this may not be the case, and it is impossible to know for certain at this juncture in the litigation, Plaintiff has alleged enough factually to establish this as a claim that is plausible on its face.  Unlike the plaintiffs in *Foster*, 595 F.3d at 369, who alleged "the imposition of punishment within a range explicitly imposed, but beyond the subjective expectation of the sentencing judge," Plaintiff contends that Judge Swartz has inflicted a greater sentence upon him than the sentencing judge did originally.  Therefore, at this juncture, Plaintiff's due process claim should not be dismissed.

## RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Defendants' motion to dismiss (Dkt. 12) be **GRANTED-IN-PART AND DENIED-IN-PART**: granted as to Plaintiff's claim for violation of the *Ex Post Facto* Clause but denied as to Plaintiff's due process claim.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.*

*Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

      Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

      s/Mark A. Randon
      MARK A. RANDON
      UNITED STATES MAGISTRATE JUDGE

Dated:  July 29, 2011

### Certificate of Service

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, July 29, 2011, by electronic and/or first class U.S. mail.*

      *s/Melody R. Miles*
      *Case Manager to Magistrate Judge Mark A. Randon*